[Civil No. 2540. Filed September 19, 1927.]

[259 Pac. 404.]

NATIONAL SURETY COMPANY, a Corporation, Appellant, v. ARIZONA GROCERY COMPANY, a Corporation, and THE J. D. HALSTEAD LUMBER COMPANY, a Corporation, Appellees.

Messrs. Stockton & Perry, for Appellant.

Messrs. Elliott & Swenson, for Appellee Arizona Grocery Company.

Mr. J. L. B. Alexander and Mr. Robert Mc-Murchie, for Appellee J. D. Halstead Lumber Company.

LOCKWOOD, J.—The state engineer entered into a contract with one A. A. Ray, whereby the latter undertook to perform certain work on the Phoenix-Wickenburg highway. As a condition precedent thereto, Ray was required to, and did execute a bond to the state of Arizona, upon which the National Surety Company, hereinafter called appellant, was surety. Ray completed his contract in accordance with its terms, and drew from the state engineer all the monies to which he was entitled excepting the sum of $1,679.84. There were many persons, however, who alleged that Ray had failed to pay for labor and material used on the job, and presented claims to him, the state engineer, and to appellant. Appellant thereupon brought a suit against Ray, the state

engineer, and all other creditors known to it, praying that all creditors be required to appear and establish the validity of their claims; that the amount still due Ray be applied in payment thereof; that the liability, if any, of appellant as surety on the bond be adjudged; and that it have judgment over against Ray for any sum which it might be obliged to pay under its bond.

The case proceeded to trial before the court without a jury, and claims of various creditors were established. The judgment required that the surety company pay into the hands of the clerk of the court for distribution to the creditors the sum of $3,029.16, and that the state engineer pay in the amount still due under the contract, being $1,679.84 as above, and directed the clerk to make distribution of the aggregate of said sums to various creditors, among them being J. D. Halstead Lumber Company, hereinafter called the lumber company, in the sum of $282.15, and to the Arizona Grocery Company, hereinafter called the grocery company, in the sum of $538.37. Pursuant to the judgment and before any notice of appeal was filed, the clerk paid out of said funds on hand with him the amounts above stated to the lumber company and the grocery company. Thereafter this appeal was duly prosecuted.

There are some ten assignments of error which we will consider in accordance with the legal propositions raised thereby. It appears from the evidence that the claim of the lumber company was for material furnished by it, the greater part of which went into the construction of a large rock bin, which, after the completion of the work, was torn down and hauled away, just what finally becoming of the material not appearing in the record. The salvage value of the material furnished by the lumber company was estimated variously at from ten to fifty per cent, some being absolutely useless, and some usable. The

claim of the Arizona Grocery Company was for groceries furnished the contractor and used by him in boarding the men working on the job. It appears from the undisputed testimony there was no other place near the work where the men could board, and they would have been forced either to board themselves, or the contractor would have had to provide a boarding place, and he could not, according to his testimony, obtain sufficient men to work on the job unless he provided a messhouse. This messhouse was maintained for the accommodation of his men only, and not for profit.

The real question then is, Do these various items come within the terms of the bond? The condition of the bond was:

"If the said contractor . . . fails to pay all moneys due or to become due for or on account of any materials or property so furnished in the said work or improvement, or the performance thereof, . . . the said surety will pay the same. . . . "

Were the supplies above mentioned and used as above described within these terms? It is argued on behalf of appellant that in the case of *United States Fid. & Guar. Co.* v. *Calif.-Ariz. Con. Co.*, 21 Ariz. 172, 186 Pac. 502, we have construed a bond of substantially similar provisions in such manner that under the authority of that case it is not liable for the materials above described. Appellees contend, on the other hand, first, that the bonds in that case and in this are dissimilar in character, and second, that, even if they are similar, our holding in the California-Arizona case in no way conflicts with the judgment rendered by the trial court in this one.

While the precise language of the bonds in the two cases differs somewhat, yet on examination of both the bond and the statute (Civ. Code 1913, par. 1962) involved in the California-Arizona case and the bond involved herein, we are satisfied that the prin-

ciple of law laid down in that case applies to a bond of the character given herein. That law, so far as pertinent to the facts in this case, is contained in the following quotation:

"It is well settled that the expression 'material furnished for the improvement' does not include all materials furnished to the contractor who makes the improvement. The requirement of the statute and the condition of the bond is not intended, as contended by the lumber company, as security that the contractor will pay for everything he buys and uses in doing the work provided for in the contract. . . . The materialmen protected by the provisions of the statute and by the bond are such only as furnish material used in the work or improvement in the sense that such material actually enters into the work done, or is consumed, or substantially consumed, in doing it, as distinguished from its use as a mere appliance in aid of performance. Material intended for and actually used as an implement or device in performing the work and constituting a part of the contractor's permanent equipment is not the kind of material for which a recovery can be had upon a bond given under the provisions of the statute above quoted. The statute gives the right of recovery upon the bond to any person furnishing materials 'to be used in the performance of the work.' In discussing the character of material coming within a statute substantially the same as ours and within the condition of a bond given under such statute, the Supreme Court of California says:

" 'This provision cannot be construed to cover and include the tools or plant purchased by the contractor, the use of which is required in doing the work, and which, barring wear and tear incident to such use, survive for such repeated and other use. . . . Indebtedness incurred by a contractor in the purchase of his plant or any part thereof, the use of which is required in doing the work, is not within the provisions of the act, nor included in the terms of the bond.' *Sherman* v. *American Surety Co. of New York,* 178 Cal. 286, 173 Pac. 161.

"'Appliances are, generally speaking, things which are expected to be used again and again. They are in effect tools. Appreciably diminishing perhaps in usefulness with the wear and tear of each building contract in which they are used, they still cannot be said to be materials furnished "for or in or about" the erection of any given structure, although after being used in the building of many structures they finally go to the junk heap.' *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.,* 146 Wis. 12, 36 L. R. A. (N. S.) 875, 130 N. W. 866.

"'Tools, implements, and appliances used by the contractor in the prosecution of the work are not materials used therein in any reasonable sense of the term. If a pick, shovel, pair of boots, hoisting rope, or any other implement, tool, or appliance used by the contractor on the work is worn out or broken, it does not follow that such article thus becomes material used therein within the meaning of the contract. The contract presupposes that the contractor will furnish, upon his own account, the necessary tools, implements, and appliances with which to perform the work.' *Kansas City* v. *Youmans,* 213 Mo. 151, 112 S. W. 225. . . .

"If, therefore, the materials furnished by the lumber company were mere appliances for use in performing the work, they became a part of the contractor's equipment, and not materials to be used in the performance of the work within the meaning of the statute or the terms of the bond.

"It is well settled that actual physical incorporation in the structure erected or improvement made is not necessary in order to constitute the articles furnished 'materials furnished in the performance of the work.' It has many times been held that explosives used in preparing the ground, or the rock for the performance of the contract, and other materials which are totally or substantially destroyed in the carrying out of the work, may be deemed materials within the proper meaning of that term. . . .

"So it has been held in some cases that lumber used in the making of concrete forms comes within the meaning of the word 'material,' and, relying upon this class of cases, the lumber company urges that

its claim comes within the rule as stated in *Chicago Lumber Co.* v. *Douglas,* 89 Kan. 308, 44 L. R. A. (N. S.) 843, 131 Pac. 563, and *Alexander Lumber Co.* v. *Farmer,* 272 Ill. 264, 111 N. E. 1012. In each of these cases, however, the lumber used was either totally or substantially destroyed in the performance of the work, or was left in and became in effect a part of the work. This matter of destruction of the material seems to be an important consideration in determining whether the article furnished can be deemed material furnished for the performance of the work. . . .

"In this case the lumber in question did not enter into the physical construction of the improvement. It was not consumed in the making of the improvement. Some of it may have been broken or destroyed in the performance of the work. All of it was rendered unsalable as new or merchantable lumber. But it was used in the performance of this contract and intended to be used in the performance of any other contract that the contractor might engage in. The extent to which it was destroyed or rendered unusable does not appear either in the finding of the court or in the evidence. Such destruction may have been inconsiderable, and such a conclusion is fairly inferable from the evidence. The fact that it would ultimately be destroyed or perhaps used but few times does not affect the question. . . . "

The holding, then, substantially is that, where anything furnished is of such a nature that it becomes in effect part of the plant or tools used by the contractor in the work, and which is intended to and can be used in another job, it is not within the term "material" as set forth in the bond, even though the deterioration therein may have been considerable. If, on the other hand, the supplies furnished are of such a nature that as a matter of fact they can be used but once, and that upon, in, or in furtherance of the particular job in question, even though they may be of an evanescent nature, so that upon the completion of the project no material remains thereof can

be found therein, they are nevertheless material used in the performance of the work, and within the condition of the bond.

Applying this rule to the claim of the lumber company, it appears to us that the trial court erred in holding that its claim *in toto* came within the bond of appellant. It should have determined from the evidence what portion, if any, of the material was totally destroyed or consumed on the particular job in question, and what portion of the material was removed for the purpose of again being used in another contract, or otherwise for the benefit of the contractor. The test is not the percentage of depreciation on the total material furnished, but what material was actually consumed in the job, and what, even though depreciated, was removed therefrom for further use.

The same general principle, we think, applies to the claim of the grocery company, and, when so applied, it appears clear to us what the result must be. The groceries were intended to be and were absolutely consumed by the workmen on the job, and were "materials used in the performance thereof" as truly as explosives used in breaking the rocks used thereon. *Brogan* v. *National Surety Co.*, 246 U. S. 257, L. R. A. 1918D 776, 62 L. Ed. 703, 38 Sup. Ct. Rep. 250. The judgment of the superior court in regard to that claim was correct.

Since the claims are separate, the entire case need not be sent back. The judgment is affirmed as to the Arizona Grocery Company, and is reversed, and the cause remanded to the superior court of Maricopa county for a new trial on the claim of the J. D. Halstead Lumber Company, in accordance with the views expressed in this opinion.

ROSS, C. J., and McALISTER, J., concur.