## The County of Lake, State of Illinois, for the Use of F. H. Dickson, Appellee, v. Southern Surety Company, Appellant.

### Gen. No. 35,049.

Heard in the second division of this court for the first district at the April term, 1931. Opinion filed February 23, 1932.

CASSELS, POTTER & BENTLEY, for appellant; RALPH F. POTTER and EARL D. HOSTETTER, of counsel.

SCHROEDER & METZGER, for appellee; WERNER W. SCHROEDER, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an action in debt brought for the use of F. H. Dickson, upon the bond of a road contractor who contracted to build a section of road in Lake county, Illinois. The claim of Dickson, hereafter called the plaintiff, is for $1,825.04 due him from the contractor for groceries and meats furnished to the latter. In a trial by the court there was a finding that the defend-

ant, Southern Surety Company, a corporation, owes the plaintiff, in debt, $112,438.44, and the plaintiff's damages were assessed at $1,825.04. The defendant has appealed. By stipulation the court in the same hearing also tried the case of *The County of Lake, State of Illinois, for use of F. H. Dickson v. Massachusetts Bonding and Insurance Company*, as surety upon a bond relating to another section of the same road. The two cases involve similar bonds and facts, and the same questions of law. A judgment was entered against the defendant in the second case, from which it prosecutes a separate appeal (265 Ill. App. 600 [abst.]). Here the two cases have been considered together.

The principal question presented is whether groceries and meats furnished to a road contractor engaged in the construction of a public highway in Illinois, and which were used and consumed in a cook house and mess hall maintained by the contractor for the boarding of laborers employed on the road, were covered by a statutory contractor's bond furnished by the defendant. The pertinent provisions of the bond are: ". . . Fred C. Nelson . . . as principal, and The Southern Surety Company, as surety, are held . . . unto the County of Lake. . . . The condition of the foregoing obligation is such that whereas said principal has been awarded the contract . . . for the construction of a State road in Lake County . . . whereby said principal has promised . . . to pay all sums of money due for any labor, material, apparatus, fixtures or machinery furnished to such contractor for the purpose of such construction or improvement, . . . and has further agreed that this bond shall inure to the benefit of any person to whom any money may be due for any such labor, material, . . . so furnished and suit may be maintained on such bond by any such person for the recovery of any such money. . . . If said Fred C. Nelson . . .

shall pay all sums of money due for any labor, material, apparatus, fixtures or machinery furnished to him for the purpose of such construction or improvement . . . then this obligation to be void, otherwise to remain in force and effect.''

Plaintiff's statement of claim alleges (*inter alia*) that it was necessary for the contractor to maintain a commissary for the boarding of his laborers; that the region where the work was done was sparsely populated and the communities in the vicinity were not equipped with hotel, restaurant or boarding accommodations of a nature suited to furnish meals to the laborers employed in the work and that it was imperative for the contractor to make his own arrangements for furnishing meals in order to obtain laborers to do the work required by the contract and the bond, and that the groceries and meats were used in a cook house and mess hall and were wholly consumed by laborers engaged in the prosecution of the work; that the contractor employed the laborers through employment agencies and had an agreement with the agencies and the laborers to furnish the latter board and lodging, and for which he was to deduct a dollar per day from each laborer's wages; that had the contractor not conducted the commissary it would have been impossible for the laborers to obtain food and, consequently, it would have been impossible for the contractor to obtain laborers to do the work required by the contract, and that the boarding camp was not maintained for profit or as an independent enterprise. Plaintiff contends that his evidence supports these allegations, and further contends that groceries and meats furnished to the contractor under such a state of facts are ''materials'' within the meaning of the statute and the bond.

The defendant contends that the bond does not cover provisions and supplies such as groceries and meats, or materials of any kind that are not for the purpose

of the improvement itself; that supplies which are used in the process of construction as a means for assisting in the doing of the work and that do not go into and become a part of the completed improvement, are not within the "scope" of such a bond; that the bond is statutory and the words used therein "are the essence of the undertaking as to the rights of third party materialmen," and that groceries and meats do not become an integral part of a concrete road; that the element of alleged necessity, if any existed, of boarding the laborers, is wholly immaterial and is not the test of liability upon the bond, but that even if the said element can be given consideration where special circumstances exist, "there is not on the facts and law in this case such degree of indispensability to the purpose of the improvement as to give rise to the kind of necessity that is contemplated by the authorities . . . upon which the plaintiff seeks to rely." The parties agree that the precise question before us has not been passed upon by the Supreme Court nor the Appellate Courts of this State.

In 1921 and 1922 the county of Lake awarded contracts for the improvement of State Aid Route No. 8 (now State Highway No. 60), which extends from the south county line in a northwesterly direction through the villages of Lake Zurich and Wauconda, and from thence to Volo. The road was divided into three sections, designated, respectively, as Section S-15d, Section T-15d and Section O-15d. Section S extended from the south county line to the main corners of Lake Zurich; Section T between Lake Zurich and Wauconda, and Section O between Wauconda and Volo. There was a separate contract as to each section but all were awarded to Nelson, a road contractor. *The provisions of the contracts are not contained in the record.* Nelson furnished a separate contractor's bond as to each section. Massachusetts Bonding & Insurance Company was the surety on the bond for Section S, Iowa Bond-

'ing & Casualty Company for Section O, and the instant defendant for Section T. Each bond was on a printed form prescribed by the Department of Public Works and Buildings and made in compliance with section 26 (6), of "An Act to Revise the Law in Relation to Roads and Bridges," approved June 27, 1913; in force July 1, 1913. Cahill's St. ch. 121, ¶ 30.

The plaintiff concedes that his statement of claim is drafted to accord with the well known case of *Brogan v. National Surety Co.*, 246 U. S. 257, and he contends that case applies to the instant question and is decisive of it. The defendant contends that case does not apply to any case under the Illinois statute, but that even if it did, it would not aid the plaintiff because he has failed to prove facts which would bring his claim within the rule laid down in that case. The *Brogan* case was an action upon a bond given under the federal statute relating to the construction of public works. The contract and the bond bound the contractor to "make full payment to all persons supplying him with labor or materials in the prosecution of the work provided for in" the bond. To quote from the opinion: "The facts undisputed or as found by the lower court and accepted by the Court of Appeals were these: The Standard Contracting Company undertook to deepen the channel in a portion of St. Mary's River, Michigan, located 'in a comparative wilderness at some distance from any settlement. There were no hotels or boarding houses' and the contractor 'was compelled to provide board and lodging for its laborers.' Groceries and provisions of the value of $4,613.87, furnished it by Brogan, were used by the contractor in its boarding house; and were supplied 'in the prosecution of the work provided for in the contract and the bond upon which this suit is based. They were necessary to and wholly consumed in such work.' The number of men employed averaged 80. They were 'boarded' partly on the dredges, partly in tents supplied by the contractor; all

under an arrangement made with the labor unions—by which the contractor was to board the men and deduct therefor $22.50 a month from their wages. . . . The supplies furnished by Brogan under these circumstances were clearly used in the prosecution of the work, just as supplies furnished for the soldiers' mess are used in the prosecution of war. . . . *The Circuit Court of Appeals deemed immaterial the special circumstances under which the supplies were furnished* and the findings of fact by the trial court that they were necessary to and wholly consumed in the prosecution of the work provided for in the contract and bond. *In our opinion these facts are not only material, but decisive. They establish the conditions essential to liability on the bond.* . . . Groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work." (Italics ours.) The federal act provided that recovery could be had by the persons who "furnished labor or materials *used* in the construction or repair" of the work. The decision is clearly based upon the theory that it was *indispensable* to the prosecution of the public work in question that the contractor supply board to the laborers engaged in the performance of the work, that "groceries furnished to a contractor under such circumstances and consumed by the laborers, are materials supplied and used in the prosecution of the public work," *and that under the special facts of the case* "the furnishing of board by the contractor was an integral part of the work and necessarily involved in it." Three justices dissented from the opinion of the majority. That case establishes the law in relation to the federal act and a bond given under it. In *National Surety Co. v. United States,* 228 Fed. 577, which was reversed by the Supreme Court in the *Brogan* decision, the Circuit Court of Appeals said (p. 583) : "The Brogan claim was for

groceries furnished to the contractor's boarding house. We cannot attach any importance to the fact that the character of the country where this work was done made it necessary for the contractor to board its men on the job—in other words, compelled it to give them their board as a part of their pay for their work. Even if there may be distinctions between one who furnishes food consumed by the men in their contractor's boarding house and food consumed by the same men in an outside boarding house, it is not seen how it can be of any importance whether the men agree to board at the contractor's place, *because it is the only one,* or do so for some other reason; *nor can there be one rule in a city and another in a wilderness.* The provisions, in one case *as in the other, either are or are not 'labor' or 'materials' used in the construction of the work."* (Italics ours.)

After the decision of the Supreme Court in the *Brogan* case the Circuit Court of Appeals, Third Circuit, decided the case of *Delaware Dredging Co. v. Tucker,* 25 F. (2d) 44, wherein a contractor contracted with the United States to excavate a channel in the Delaware river. Mud scows were used in the work and the plaintiff sued to recover for meals furnished the scowmen while engaged in the work. The bond was conditioned for payment to all persons supplying the contractor with "labor or materials in the prosecution of the work." The court states (p. 46) that while the Supreme Court has refused to limit the application of the act to materials directly incorporated into public work, nevertheless, "there must be special circumstances showing that the furnishing of board was indispensable to and an integral part of the work and necessarily involved in it, before it can be said that meals and board are materials furnished 'in the prosecution of the work.' *United States v. Kimpland* (C. C.) 93 F. 403; *Brogan v. National Surety Co.,*

246 U. S. 257, 261, . . . Here there were no special circumstances, showing that the men were engaged in work located 'in a comparative wilderness,' far from any settlement, so that the laborers had to be boarded there. There is nothing to show that the furnishing of these scowmen with meals was indispensable to the work, formed an integral part of it, or was necessarily involved in it. It follows that the plaintiff is not entitled to the $69.67 for furnishing meals to the scowmen of the canal company.''

The federal act and a bond given under it were before the court in *United States v. Fidelity & Deposit Co. of Maryland,* 169 Ill. App. 1, and it was there held, in an able opinion, that feed furnished for the teams of a contractor was not included within the statute and the bond. While this decision was rendered before the *Brogan* case and is, therefore, not now the law, nevertheless, the reasoning and conclusion of the court are helpful to us in passing upon the vital question before us. In *United States v. Lowrance,* 236 Fed. 1006 (decided before the *Brogan* case), the court held that feed for animals did not fall within the bond under the federal act, and it was said (p. 1008) : ''The only reported case which the court has been able to find in which the identical question was determined by any court under this act of Congress, and that was the act of 1894, is *United States v. Fidelity & Deposit Co.,* 169 Ill. App. 1. In that case it was held, in a very carefully prepared opinion, reviewing numerous authorities, that such articles are not materials furnished in the prosecution of the work, within the meaning of this statute, and therefore no liability on the bond for them.'' In *Wiss v. Royal Indemnity Co.,* 219 Mo. App. 568, 584, decided after the *Brogan* case, the court, in passing upon a bond given under the Missouri statute, also quotes with approval *United States v. Fidelity & Deposit Co. of Maryland, supra.* The Minnesota statute

requires that a bond be given for the use of "all persons doing work or furnishing skill, tools, machinery or materials under, or for the purpose of such contract," and in *Westling v. Republic Casualty Co. of Pittsburgh,* 157 Minn. 198, the court held that under the statute "groceries and meats are not included in the word 'materials' and hence defendants cannot be held liable therefor." The court states that it refuses to follow the doctrine of the *Brogan* case, as in its opinion, meats and groceries could not be "materials" within the Minnesota statute under any state of facts. In the later case of *Standard Oil Co. v. Remer,* 170 Minn. 298, which was also an action on the bond of a road contractor and involved a claim for groceries consumed by laborers in the camp of the contractor, it appeared that the work was performed "in a comparative wilderness, the nearest settlement being ten to twenty miles away from different portions of it, that there were no boarding houses or hotels sufficient to house and feed the men within a reasonable distance, and that it was necessary for the contractor to erect and maintain camps, and purchase and supply provisions for the men on the work," but the court adhered to its ruling in *Westling v. Republic Casualty Co., supra.* In *Wiss v. Royal Indemnity Co., supra,* the court held that feed sold and delivered to subcontractors which was used by them in feeding mules used in the construction of the highway was not "material" that was "used in such work" within the terms of the bond, even though the feed was consumed by the teams used by the contractor in doing a part of the work. The Missouri statute prescribes that the "successful bidder shall enter into a bond . . . conditioned for the faithful performance of the contract, . . . and the payment for all materials and labor furnished and performed in the completion of said contract and giving the right of action to materialmen and laborers for

materials furnished and labor performed under said bond. . . ." In an exhaustive opinion the court said: "Our view is not shaken by the Federal cases cited by respondent. (*Brogan v. National Surety Co.*, 246 Fed. Rep. 257; *U. S. v. Lawrence*, 252 Fed. Rep. 122.) These cases must be viewed in the light of the Federal Statute, . . . which provides that any person contracting for any public work shall execute a penal bond that the contractors shall pay for not only labor and material that go directly into the completed structure, but for all labor and material furnished *'in the prosecution of the work provided for in such contract.'* It is at once apparent that the language of the Federal Statute is much broader than that of conditions of the bond before us and of our Missouri statutes, and is in fact broader than many of the Mechanics' Lien Acts of the several states.'' The court also holds that certain cited decisions of other states are readily distinguishable from the case before it by reason of the difference in the language of the statutes. *Lillard v. Royal Indemnity Co.*, 219 Mo. App. 584, was an action on a road contractor's bond for groceries and provisions furnished and used in a camp to board the laborers, and the decision follows the ruling in *Wiss v. Royal Indemnity Co., supra.* Courts of other states, in interpreting their statutes, have also refused to follow the *Brogan* case. The *Brogan* case is not binding upon us in the instant case, and we agree with the three justices who dissented in that case. Notwithstanding our high respect for the decisions of the federal Supreme Court, we feel constrained to say that the doctrine of the *Brogan* case appears to be an example of the old legal maxim that "hard cases make bad law."

But even if we should assume that the doctrine of the *Brogan* case is properly applicable to the Illinois statute and a bond given under it, where certain special circumstances are present, nevertheless, we would

be compelled to hold that the plaintiff has not proven such a case as entitles him to the benefit of that doctrine. The road is located in the southwestern part of Lake county, Illinois. The section covered by the bond extends from Lake Zurich to Wauconda, a distance of about five and one-half miles. A circle with a radius of 20 miles and with the crossroads in Lake Zurich as its center, had about 50 villages, towns and cities within it. The population of these villages, towns and cities, in 1920, was 110,520. The record does not disclose the rural population, but it does show that the lands outside of the villages, towns and cities were used for farming purposes, with the exception of that around the lake, where there were hotels and boarding houses used as summer resorts. Lake Zurich is about 35 miles from the city limits of Chicago on the north; about 17 miles from Waukegan, North Chicago and Elgin; less than 10 miles from Libertyville and Arlington Heights, and approximately five miles from Barrington, Palatine and Wauconda. Elgin had a population of 30,000, Waukegan about 20,000, and Lake Zurich 500. The eastern portion of Lake county is an industrial section. The plaintiff endeavored to bring himself within the rule of the *Brogan* case, but in our opinion he failed to do so. His principal evidence may be briefly stated as follows: The contractor employed only a few local laborers and most of the workmen were secured through labor agencies located at Canal and Madison streets in Chicago. The men "were just common laborers picked up from Chicago streets" and were taken by the contractor to the place of the work. He agreed with the labor agencies and the men to provide their meals and lodging. Most of the men were of a type that many people would not care to take into their homes and "it seemed a much better arrangement to have a camp for the men to come and get their meals, their bunks are there and if those bunks happen

to get lousy you haven't got a quarrel with somebody that has a home there." There was opinion evidence to the effect that there was not an ample supply of labor in Lake county at that time; that while it was not impossible to obtain some laborers there, of the type required, it was impossible to get a sufficient number; that while there were groups of common laborers at North Chicago it was not "practical" to get labor from the industrial districts. An important witness for the plaintiff testified that he did not "think common labor could have been gotten *in a practical way* to do the work on these roads from the industrial districts around Waukegan or North Chicago or from the farms"; that during the spring and summer the farmers were busy in their farm work. The work in question was done between October 5 and November 24. The proof of the plaintiff that it was necessary and indispensable to the construction of the road that camps and commissaries be maintained to feed the laborers, was by means of opinion evidence, which was received over the objection of the defendant, and should not have been admitted. It is apparent, even from the testimony of the plaintiff, that the contractor made little, if any, effort to secure laborers living in Lake county. He did not advertise in any of the local papers for labor, nor did he post any notices that labor was needed on the work. There was evidence that there were a number of hotels and boarding houses located at Wauconda and Lake Zurich and while most of them were summer resort places that did not cater to common laborers, nevertheless, the work was done in the fall of the year when the summer season had closed, and Nelson states that he did not inquire at the hotels or boarding houses in Lake county to learn if the men could be boarded there, because "the class of men that we got are an undesirable class as tenants." Even from the statement of claim, it appears that Nelson furnished the men with board and lodging be-

cause of his agreement with the employment agencies and the laborers that he would furnish the latter with board and lodging. He admitted that when he engaged the men *he contracted to board them,* and that at that time he had not made any inquiries as to whether he could obtain local labor, nor as to whether laborers could be boarded in the vicinity of the work. The average crew working on a section consisted of 60 men, of whom 15 were skilled workmen, and it seems idle to contend that in the fall of the year the plaintiff could not have secured 60 laborers from the neighborhood. Of 14 contractors who did work in Lake county between the years 1919 and 1924, one, and possibly two, did not maintain boarding places and sleeping quarters for their men. That it may have been cheaper, more convenient, advantageous and practical for the contractor to furnish meals for the men may be conceded, but, in our opinion, it cannot be reasonably argued, from the facts, that the furnishing of food was *indispensable* to the prosecution of the work and formed an integral part of it, or was necessarily involved in it, within the meaning of the doctrine announced in the *Brogan* case. In *Delaware Dredging Co. v. Tucker, supra,* the plaintiff presented a stronger case of necessity than has the instant plaintiff, but the United States Circuit Court of Appeals held that it did not come within the doctrine announced in the *Brogan* case and refused to allow the claim. When Nelson defaulted upon the contract and the defendant took it over, it hired Nelson "to go ahead with the physical end of the work and he had the same working agreement with the labor agents in Chicago to furnish the labor that he had prior to the time that the surety company took over this work." A witness for the plaintiff testified that a representative of the Massachusetts Bonding Company and the defendant agreed to allow Nelson to conduct the bunk house and camp as he had previously done and to buy supplies from the plaintiff.

These supplies were paid for and they form no part of the instant claim. It is obvious that the defendant was not in the business of road construction. Nelson, at the time, had a "nucleus organization," and the representative of the defendant concluded that it was the *practical thing* to have Nelson continue the work in his own way. It also appears from the evidence of the plaintiff that this representative was endeavoring to save money in the matter of finishing the contract. We cannot agree with the contention of the plaintiff that the defendant's action in sanctioning the feeding and boarding of the men proves that the maintenance of a boarding camp was *indispensable* to the prosecution of the work.

The plaintiff contends, however, that certain cases show a tendency to relax the rule of the *Brogan* case, and to allow claims for groceries furnished to a contractor even where the necessity for the maintenance of the camp is not alleged or proved. *Delaware Dredging Co. v. Tucker, supra,* clearly indicates that there is no such tendency in the federal courts. As to the cases cited by the plaintiff in support of this last contention: In *Union Indemnity Co. v. State,* 99 Fla. 656, 127 So. 307, the statute required the contractor to make payments to all persons supplying him or them "labor, material and supplies used directly or indirectly in the prosecution of the work," and the opinion states that the Florida statute is broader than the federal statute interpreted in the *Brogan* case. In *West v. Detroit Fidelity & Surety Co.* (Neb.), 225 N. W. 673, 674, the bond was conditioned that the contractor "shall pay for all labor, equipment, gasoline, oils, materials and supplies used or employed on said contract." In *Union Indemnity Co. v. Handley* (Ala.), 124 So. 876, the bond provided that "the contractor agrees that he will pay all sums which may be due for labor in the performance of this contract, and for materials and supplies used in its performance as the

same become due." We may add that the Alabama court held that not only food furnished the laborers, but also clothing, tobacco and cigarettes furnished them came within the provision of the bond. In *McElrath & Rogers v. W. G. Kimmons & Sons* (Miss.), 112 So. 164, wherein the court allowed a claim for groceries furnished the subcontractors for a camp which they ran for the purpose of boarding their hands, the decision, apparently, is based upon the *Brogan* case, for it states that "the proof showed that there were no negroes with whom the negro laborers could obtain board, and it was necessary, in order to perform the contract, to maintain a place at which they could be fed; their board being a part of their compensation for the work. Ordinarily, supplies for a camp or a commissary would not be allowed, but, under some conditions, it is proper to allow the actual cost of the board furnished the laborers as a part of their compensation." In *National Surety Co. v. Arizona Grocery Co.*, 32 Ariz. 399, 259 Pac. 404, the condition of the bond was that "if the said contractor . . . fails to pay all moneys due or to become due for or on account of any materials or property so furnished in the said work or improvement, or the performance thereof, . . . the said surety will pay the same . . ." and it is was held that under this bond there might be a recovery for groceries consumed by workmen on the job. The opinion states: "It appears from the undisputed testimony there was no other place near the work where the men could board, and they would have been forced either to board themselves, or the contractor would have had to provide a boarding place, and he could not, according to his testimony, obtain sufficient men to work on the job unless he provided a messhouse." The court cites the *Brogan* case in support of its ruling. It is not necessary to consider *American Surety Co. v. Dick Co.*, 23 F. (2d) 464, as the plaintiff concedes that "the bond in that case was

very broad in its scope." In fact, it was even broader than the statute of New Mexico required, but the court held that the obligation of the surety was determined by the language of the bond. In *Carter County v. Oliver-Hill Const. Co.,* 143 Tenn. 649, 228 S. W. 720, the court quotes practically the entire opinion in the *Brogan* case and states that it approves what is therein said, and in a later case, *Southern Const. Co. v. Halliburton,* 149 Tenn. 319, 342, the court, in disallowing a claim for groceries furnished the contractor and used by the latter in the camps where his laborers were fed, said: "It does not appear that it was absolutely. necessary for Halliburton to have undertaken to feed his laborers himself. This may have been done for additional profit. The laborers might have been boarded elsewhere. This work was not being done in a wilderness, as in *Brogan v. National Surety Co.,* 246 U. S. 261 . . . . Approved in *Carter Co. v. Oliver Hill Construction Co., supra.* At any rate, as we said in *Cass v. Smith, supra* (146 Tenn. 218), we do not desire to extend the scope of *Carter Co. v. Oliver Hill Construction Co."* In *Bricker v. Rollins & Jarecki,* 178 Cal. 347, 173 Pac. 592, the bond provided that "if said principals as contractors in said contract fail to pay for any materials or supplies furnished for the performance of the work contracted to be done in and by said contract, or for any work or labor done thereon of any kind, said surety will pay the same," etc. While the court cites the *Brogan* case in support of its ruling that flour, meat, etc., were "supplies" within the meaning of the California statute, it adds that "as to this class of claims a less difficult question is presented, arising out of the broader meaning to be given to the word *'supplies,'* as used in the statute and bond."

The defendant contends that food supplies are not embraced in the Illinois statute nor the instant bond. The pertinent language in the bond is, "to pay all sums

of money due for any labor, material, apparatus, fixtures or machinery furnished to such contractor for the purpose of such construction or improvement." This language was taken verbatim from the statute. Sec. 26 (6) of the act, Cahill's St. ch. 121, ¶ 30, reads: "Each contractor . . . shall execute a bond in the form prescribed by the commission, . . . conditioned that he will perform the work in accordance with the terms of the contract . . . . Such bonds shall also provide against any direct or indirect damages that may be suffered . . . : *Provided,* one-third the total amount of such bond shall also be conditioned upon the payment by the contractors of all sums of money due for any labor, material, apparatus, fixtures, or machinery furnished to such contractor for the purpose of such construction or improvement. One-third total amount of such bond shall inure to the benefit of any person to whom any money may be due for any such labor, material, apparatus, fixtures or machinery so furnished and suit may be maintained on such bond by any such person for the recovery of any such money." At the top of the bond appear the words, "State of Illinois, Department of Public Works and Buildings, Contractor's Bond." Sec. 26 (5) reads: "The commission shall prescribe the form of contract and may include therein such matters as they may deem *advantageous to the State.* Such forms shall be uniform in so far as it may be." As the statute prescribes its terms, even if it be assumed that the act is a remedial one and the bond is to be construed liberally, still it is evident that this is not a case where a presumption arises that the surety used words most favorable to its own interest. Our duty is to ascertain and give effect to the intention of the legislature as expressed in the statute. "Statutes should be read and understood according to the natural and most obvious import of the language used, without resort to subtle

or forced constructions for the purpose of limiting or extending their operation." (*People v. Shader,* 326 Ill. 145, 161.)

The plaintiff contends that when the bond is liberally construed the word "materials" includes groceries and meats. He further contends that the Illinois statute is, in substance, the same as the federal statute. We do not concede that this last contention is a meritorious one. In *Wiss v. Royal Indemnity Co., supra,* the Missouri court held that the language of the federal statute was much broader than the Missouri statute and that it was in fact "broader than many of the Mechanics' Lien Acts of the several states." The language of the Missouri statute has been heretofore quoted, and is somewhat similar to that of our own. It is undoubtedly the policy of the United States courts to give a very liberal construction to the federal act. (See *United States v. Ansonia Brass & Copper Co.,* 218 U. S. 452, 471.) To give the Illinois act the construction contended for by the plaintiff would require reading into it such words as "food supplies used in the prosecution of the work." If the statute be liberally construed, nevertheless, in our opinion, there is no language in it that warrants such a construction. It seems clear that the statute did not intend that there should be one rule for a city or populated place and another for a wilderness or sparsely settled district, and we must hold that food supplies are or are not "materials," regardless of the character of the neighborhood of the work. We agree with *National Surety Co. v. United States, supra* (p. 583), in that regard. To apply the doctrine of indispensability of the *Brogan* case to the word "materials" would give a forced construction to the language of our statute and extend its plain meaning. The defendant contends that the pertinent words in the statute are the same as those specified in section 1 of the Mechanics' Liens

Act, Cahill's St. ch. 82, ¶ 1 *et seq.*, passed before the Roads and Bridges Act, and that therefore the construction by the Supreme Court as to what is included in the words "labor, material, apparatus, fixtures or machinery" in said section "is authoritative in determining what is covered by the bond" in the instant case. It cites *Hoier v. Kaplan,* 313 Ill. 448, and *Haas Electric & Mfg. Co. v. Amusement Park Co.,* 236 Ill. 452, but those cases arise under a lien statute creating a lien against private property, and are, therefore, not helpful. The plaintiff cites *Standard Oil Co. v. Vanderboom,* 326 Ill. 418, in which it was held that parties furnishing a contractor gas, oil and grease, which are entirely consumed in the use of machinery in the construction of a State hard road, are entitled to a lien, under section 23 of the Mechanics' Liens Act, Cahill's St. ch. 82, ¶ 23, on money due the contractor and unpaid, and against which no bonds, warrants, vouchers or other evidence of indebtedness had been issued or delivered to the contractor. Section 23 merely gives a lien against *moneys due to the contractor from the State,* and, as the court said (p. 424): "No rights of the State are prejudiced or infringed upon, but the person affected is the contractor who owes the money to the person furnishing the materials." The court quoted with approval the following from *West Chicago Park Com'rs v. Western Granite Co.,* 200 Ill. 527: "The fund devoted to the payment for the work was brought under the control of the court and subject to whatever decree might be finally made." We cannot agree with the contention of the plaintiff that the case cited is a decisive authority in support of his contention that the word "material" includes groceries and meats. In support of his contention that the great weight of authority is that groceries, meats, etc., furnished a contractor for public work and necessarily used and consumed by the men during the progress of

the work are materials within the meaning of a statutory bond conditioned for the payment for all labor and materials furnished for the construction or improvement, the plaintiff cites a number of cases, some of which we have already cited and analyzed. As to the others: In *McPhee v. United States,* 64 Colo. 421, recovery was allowed under the federal statute involved in the *Brogan* case. The court held that the case, under the facts, came clearly within the doctrine of the *Brogan* case. In *Hansen v. Remer,* 160 Minn. 453, the bond was conditioned for the payment by the principal of claims for "camp supplies, equipment and equipment supplies furnished to said contractor and used in connection with said contract." The plaintiff admits that this case is not in point because of the broad language of the bond. In *Plyler v. Elliott,* 191 N. C. 54, the court bases its opinion on the *Brogan* case, and reversed the judgment in order that the question of fact as to whether it was necessary to furnish board for the employees might be submitted to a jury. *Clatsop County v. Fidelity & Deposit Co.,* 96 Ore. 2, follows the *Brogan* case and holds that the camp arrangement was practically the only way that the work could have been successfully prosecuted, as the proof showed that "the portion of the highway which Hadley graded ran through an unsettled region remote from any city or boarding place, and extended over a distance of about 10 miles." The Oregon act provided for the payment of "labor or materials for *any* prosecution of the work provided for in the contract." The decision in *Carter County v. Oliver-Hill Const. Co., supra,* is based upon the *Brogan* case. The same is true of *Southern Surety Co. v. Guaranty State Bank* (Tex. Civ. App.), 275 S. W. 436, and *Fidelity & Deposit Co. v. Bailey-Pleasants Co.,* 145 Va. 126, 133 S. E. 797. In the last case the parties stipulated "that . . . it was necessary for the construction company to board the men and teams." This case might be other-

wise distinguished from the instant one, if it were necessary.

The defendant cites a number of cases relating to public work which hold that the word "material" as used in a statute or bond does not include provisions, groceries or meats. We have heretofore referred to some of these and we do not deem it necessary to refer to the others.

The plaintiff also contends that "while plaintiff's claim is not primarily based upon the theory that the word 'labor,' as used in the bond, includes food furnished to laborers as part of their compensation, yet it is urged as one basis for recovery here and is supported by strong authority." The argument is "that the contractor deducted $1.00 per day from the wages of his laborers in return for giving them board and lodging. In lieu of this $1.00 of wages the laborers were given the food which plaintiff supplied and for which he has not been paid. If the laborers had not been given the food which plaintiff supplied, they would unquestionably all have had a claim against defendant for the $1.00 per day so withheld. In reality plaintiff, by the supplying of the groceries and meats, has paid this $1.00 per day of obligation to each laborer, which defendant would otherwise be bound to pay. Why then in equity and good conscience should not plaintiff be subrogated to the rights of the laborers against defendant?" The plaintiff practically concedes that he does not rely very strongly upon this contention, and we fail to see how his argument in support thereof can aid us in interpreting the statute and bond in question.

Holding, as we do, that the plaintiff is not entitled to recover under the statute and bond in question, the judgment of the municipal court of Chicago is reversed.

*Reversed.*

GRIDLEY, P. J., and KERNER, J., concur.