(No. 5940.   June 2, 1933.)

L. G. LEBRECHT, Respondent, v. UNION INDEMNITY
COMPANY, a Corporation, Appellant.

[22 Pac. (2d) 1066.)

Walter H. Anderson for Appellant Union Indemnity Company.

Henry M. Hall and Chapman & Chapman, for Respondent.

WERNETTE, J.—The essential facts necessary for the determination of this case are substantially as follows: Respondent, L. G. Lebrecht, had been engaged in the potato business at Kansas City for many years. During the year of 1930 Vern W. Hise, of Idaho Falls, acted as his agent in Idaho for the purpose of buying potatoes. Frank J. Fowler and J. T. Stanger were a copartnership, doing business in the vicinity of Jerome, Idaho, under the firm name and style of Fowler & Stanger, hereafter designated as brokers. During the potato season of 1930, respondent purchased from said brokers fifty-five carloads of potatoes at different prices, paying from $75 to $100 advance on each car, usually paid by Hise with check, who was reimbursed by respondent; when the cars were shipped out the balance would be paid. During the month of September, 1930, Fowler & Stanger made written application to the Commissioner of Agriculture for the State of Idaho for license as farm produce brokers, farm produce dealers and farm produce commission merchants, pursuant to the provisions of chapter 10, Idaho Code Annotated, pertaining to dealers

in farm produce, which application was accompanied by a surety bond, executed by the Union Indemnity Company, appellant, as provided for in said chapter. The application was granted and a license issued to said brokers, and the bond and license are in full force and effect. From time to time during the fall of 1930 respondent made further cash advances to said brokers, other than those above mentioned.

In October, 1930, said brokers began to delay deliveries of potatoes to respondent as per agreement, and respondent began to insist upon shipments being made. On November 11, 1930, respondent talked to said brokers at Jerome, Idaho, by long-distance phone from Kansas City, and it was suggested by said brokers that respondent had better come to Jerome to get the matters then pending, between the brokers and himself, straightened out. As a result of such telephone conversation, respondent came to Idaho the latter part of November, 1930. The accounts between said brokers and respondent were checked and found to be correct. Further advance payments were at that time made, by respondent to said brokers, so that respondent then had a credit of $4,960 as advance payment for potatoes, for which respondent was to have five carloads of potatoes then in transit, bills of lading to the five carloads of potatoes being delivered to respondent amounting to the sum of $1,908, leaving a credit balance in favor of respondent in the amount of $3,052, for which the brokers were to ship and deliver eight carloads of potatoes within thirty days. A bill of sale from said brokers to respondent was executed and delivered for the eight carloads of potatoes, the same to be free and clear of all incumbrances. A valid chattel mortgage was then outstanding against part of said potatoes, which fact was not disclosed to the respondent. Respondent received the five carloads of potatoes, which were in transit when he was at Jerome, but the eight additional carloads of potatoes were never shipped or delivered, nor was any part of the $3,052 repaid to respondent, although respondent had made demand for both.

Action was instituted by respondent against Fowler & Stanger and the Union Indemnity Company for damages in the sum of $3,052.80, on account of failure to deliver said eight carloads of potatoes or to repay said $3,052.80; respondent claiming that by reason of the failure of Fowler & Stanger, the copartnership, to deliver said potatoes or repay the sum of $3,052.80, they breached and violated the produce dealer's bond furnished by the appellant surety company, and it became indebted to respondent in said amount according to the terms of the bond. Fowler & Stanger made default in said action. Appellant surety company appeared and made answer denying liability. The case was tried before a jury, resulting in a verdict in favor of appellant. Motion for new trial was made by respondent, which motion was granted. This appeal is from the order granting a new trial.

We find the determination of one question is conclusive of this case. Was the statutory bond, furnished by appellant for the brokers, designed to protect a party in the position of the respondent, who was to be the consignee of the brokers? We think not.

The sections of chapter 10, Idaho Code Annotated, relating to dealers in farm produce, pertinent to the issues involved, are as follows:

Sec. 22–1002. "A farm produce broker, farm produce dealer, or farm produce commission merchant, within the meaning of this act is any person who shall contract to purchase, or who shall handle for compensation or promise thereof, for the purpose of resale or sale or who shall handle on account of or as an agent for another, any farm produce as herein defined, or who sells or offers for sale, who buys or offers to buy, negotiates or offers to negotiate the sale or purchase of fruits, vegetables and products of the apiary or any interest therein, either directly or indirectly. The provisions of this act shall not apply to any person who grows or produces farm produce, or purchases farm produce for his own use, nor to any person, who, being the owner of such farm produce, sells, exchanges, or other-

wise disposes of it for his own account, nor to any person who makes purchase of such farm produce for the purpose of retail sale within the state, and who does resell such farm produce in less than carload lots and in the retail trade within the state.''

Sec. 22–1003. ''The term 'farm produce' as used in this act shall mean and include the natural produce of the farm, orchard, garden and apiary, except hay, grain, and livestock.''

Sec. 22–1004. ''The word 'consignor' as used in this act shall be deemed to be any person who has by contract sold and delivered in car lot or. lots other than for cash in hand, any farm produce as the same is defined in this act; to any farm produce broker, farm produce dealer, or farm produce commission merchant, or any person who has by contract delivered in car lot or lots farm produce as the same is defined in this act to any farm produce broker, farm produce dealer or farm produce commission merchant to be sold by such broker, dealer or commission merchant for compensation either as agent or otherwise.''

Sec. 22–1005. ''No person shall act as farm produce broker, farm produce dealer, or farm produce commission merchant within the meaning of this act without first having obtained a license and given a bond as hereinafter described. Such license shall expire on June 1st of each year and must be renewed yearly.''

Sec. 22–1006. ''Any person desiring to act as a farm produce broker, farm produce dealer, or farm produce commission merchant within the meaning of this act in the state of Idaho, shall make written application for a license therefor to the commissioner of agriculture, stating the name and residence of the applicant, his principal office or place of business in this state, name of the person or persons in charge of his office or business in this state, the names and addresses of five persons residents of this state, of whom inquiry can be made as to the character, standing or reputation of the applicant; if the applicant is a corporation, the names and addresses of its officers and directors; if a co-

partnership, the names and addresses of the partners. All applications for licenses hereunder shall be filed with the commissioner of agriculture and shall be accompanied by a good and sufficient bond in the penal sum of not less than $2500 and upon a form to be approved by the attorney-general of the state of Idaho, and shall be executed by the applicant as principal and by a surety company authorized to do business in the state of Idaho as surety. Said bond shall be for the benefit of any and all consignors having any cause of action against the broker, dealer or commission merchant, giving such bond and arising out of a breach of contract either express or implied of such broker, dealer or commission merchant with a consignor or with consignors as broker, dealer, commission merchant and consignor or consignors or for any fraud practiced by such broker, dealer or commission merchant for the violation of the rights of any consignor or consignors, and shall be conditioned for the faithful performance by the applicant of all duties as such broker, dealer or commission merchant, and shall be for the full period of the time covered by the license. . . . . ''

Sec. 22-1008. ''The bond herein required to be given shall be conditioned that said applicant will conduct and transact his business honestly and without fraud of any kind or nature and will comply with the provisions of this act and all the laws of the state of Idaho. Any person injured by dishonesty, fraud or violation of the provisions of this act or of the laws of the state of Idaho, committed by any person licensed under the provisions of this act and while engaged in such business shall have a right of action on such bond for his damages not exceeding the amount of the bond.''

That Fowler & Stanger were farm produce brokers, farm produce dealers or farm produce commission merchants, as defined by sec. 22-1002, I. C. A., there is no question.

Appellant makes the contention that this was a private transaction of Stanger regarding potatoes he raised on his own land, and not a partnership deal, therefore coming within the exceptions of sec. 22-1002, I. C. A. We find

that the record and evidence disclose no merit in such contention.

The potatoes that were to be shipped were farm produce, as provided by sec. 22–1003. It is not contended that the respondent was in any way a consignor as defined by sec. 22–1004. We must concede that the language used by the legislature in sec. 22–1006 and sec. 22–1008, providing for whose use and benefit the bond required should be, is not as apt and direct as it may have been and seems to be somewhat ambiguous. In order to determine, however, the intention of the legislature, it is necessary to consider and construe, together, all of the sections of the statutes applicable, and from all of the provisions determine what was really meant. Upon a close analysis of secs. 22–1006 and 22–1008, I. C. A., we believe that it quite clearly appears that it was the intention of the legislature that the bond required to be furnished under the act was to be for the benefit of the consignor, or consignors only, as defined by sec. 22–1004, and not for the benefit of any other persons, such as the respondent in this case. Had the legislature intended that the bond should be for the benefit of any person injured by dishonesty, fraud or violation of the provisions of the act or the laws of the state of Idaho, committed by any person licensed under the provisions of the act, as is provided by sec. 22–1008 when considered alone, and as contended by respondent, then certainly it would not have used the language expressed in sec. 22–1006, " . . . . said bond shall be for the benefit of any and all consignors having any cause of action against the broker, dealer or commission merchant, giving such bond and arising out of a breach of contract either expressed or implied of such broker, dealer or commission merchant with a consignor or with consignors as broker, dealer, commission merchant and consignor or consignors or for any fraud practiced by such broker, dealer or commission merchant for the violation of the rights of any consignor or consignors, . . . . " It undoubtedly would have used language in sec. 22–1006 similar to this: "Said bond shall be for the benefit of any and all

consignors having any cause of action against the broker, dealer or commission merchant, giving such bond and arising out of a breach of contract either expressed or implied of such broker, dealer or commission merchant with a consignor or with consignors as broker, dealer, commission merchant and consignor or consignors or for any fraud practiced by such broker, dealer or commission merchant for the violation of the rights of *any person,*" instead of the language which it did use.

It is also to be noted that the legislature clearly defined who a consignor is under the terms of the act, so there could be no question as to who was to be protected. If the legislature intended to protect others, as well as consignors, wouldn't it be reasonable to presume that it would have defined who such other parties were, to be protected by the act, as well as the consignors? Not all consignors are protected by the act. If the farm produce, as defined, is delivered to the broker, dealer or merchant for cash in hand paid, such party delivering is not a consignor as defined by sec. 22–1004, and is not to be protected by the bond provided for in sec. 22–1006, as the consignor contemplated in the last-named section is the only one as defined by the act, which would exclude any other. Therefore, if a consignor who is paid cash in hand, for the produce delivered, is defrauded by the broker, dealer or merchant, he would have to seek his remedy, not as against the surety, but against the party defrauding. If the construction placed by respondent was adopted, any consignor, or anyone else, could hold the surety for a violation of his legal rights, which is contrary to the letter or spirit of the act.

Considerable stress is placed by respondent upon the clause with regard to the bond, found in sec. 22–1006, after the provisions that the bond shall be for the benefit of the consignors, etc., "and shall be conditioned for the faithful performance by the applicant of all duties as such broker, dealer or commission merchant." We feel that said clause is rather repetitional than copulative, and refers back to the duties that the broker, dealer or merchant owes to the con-

236

signor rather than to parties generally. (*Donley v. Bank*, 40 Ohio St. 47.)

■ Section 22–1008, I. C. A., must be construed in conjunction with secs. 22–1004 and 22–1006, and in the light of the language therein expressed. It is true said section, in part, provides that "any person injured by dishonesty, fraud or violation of the provisions of this act or the laws of the state of Idaho committed by any person licensed . . . . shall have a right of action on such bond." Had the word "consignors" been used instead of the word "person," in the portion of the section quoted, there would be no ambiguity. We have no doubt that the legislature intended that the word "person," there used, had reference to any person defined to be a consignor by sec. 22–1004, who is to be protected by the bond under sec. 22–1006. That the legislature intended such a construction is logical, reasonable and just.

A consignor, as defined, parts with his produce in large quantities, by selling and delivering the same to the broker, dealer or merchant without getting his pay for the same, who, in turn disposes of the produce and invariably receives his money. Without the security furnished under the act, the consignor would have to rely entirely upon the financial standing, honesty and integrity of the broker, dealer or merchant, that he will be honestly dealt with. Sharp practices and financial instability were oftentimes found to exist, causing the consignor to suffer loss, which undoubtedly, prompted the passage of the act. Other people deal with the broker on an altogether different basis and are in a much better position to protect themselves. These are reasons why protection should be and is afforded to the consignor, and not to others. This being a statutory bond, its terms will be construed under the statute to afford protection to the consignor only. In construing a statute it is the duty of the court to consider the reason for the law, its object and purpose, so as to ascertain and render effective the legislative intent. (*Steinour v. Oakley State Bank*, 32 Ida. 91, 177 Pac. 843; *Turner v. Roseberry Irr. District*, 33 Ida. 746, 198 Pac. 465; *Weaver v. Rambow*, 37 Ida. 645, 217 Pac.

610; *Gallafent v. Tucker*, 48 Ida. 240, 281 Pac. 375; *State v. Holder*, 49 Ida. 514, 290 Pac. 387; 59 C. J. 943; 25 R. C. L. 1012.)

In view of the conclusion reached, the court erred in granting the motion for a new trial.

The order granting a new trial is reversed, and the trial court is directed to reinstate the judgment. Costs to appellant.

Holden, J., and Sutphen, District Judge, concur.

MORGAN, J., Concurring.—I concur in the reversal of the order appealed from, but dissent from the interpretation placed on Idaho Code Annotated, secs. 22–1006 and 22–1008, limiting the protection of the bond required to consignors of farm produce.

Section 22–1006 requires the giving of a bond for the benefit of any consignor having cause of action against a farm produce broker, dealer or commission merchant, arising out of contract, express or implied, and while it is intended to protect the consignor against fraud perpetrated by the bonded party, it is not limited to such cause of action, but is intended to insure to the consignor the faithful performance of all duties of such broker, dealer or commission merchant to him. In other words, the bond protects the consignor of farm products against the default of the bonded party, whether the conduct of the latter be fraudulent or not.

Section 22–1008 requires the bond to be so conditioned that the broker, dealer or commission merchant will conduct his business honestly, without fraud, and in compliance with the law, and gives a right of action on the bond to any person injured by dishonesty, fraud or the violation of the laws of Idaho committed by a party licensed and bonded under the provisions of Idaho Code Annotated, title 22, chapter 10.

It is clear these conditions are intended to protect consignors of farm products from any default or act of wrong-

doing on the part of a farm produce broker, dealer or commission merchant whether fraudulent or not, and that anyone, other than such a consignor, who is injured by fraud or violation of the law, committed by the party bonded, shall be protected by the bond.

In this case respondent was not a consignor, and the action was not based on fraud, nor violation of law; therefore he is not entitled to recover.

GIVENS, J.—I concur in the foregoing views expressed by Justice Morgan.