No. 16,485.

MASSACHUSETTS BONDING AND INSURANCE COMPANY
v. BANK OF AURORA.
(238 P. [2d] 872)

Decided November 26, 1951. Rehearing denied December 17, 1951.

Mr. CHARLES W. SHELDON, JR., Mr. GODFREY NORDMARK,
for plaintiff in error.

Mr. JOHN F. MUELLER, Mr. GREGORY A. MUELLER, for
defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

WE will hereinafter refer to plaintiff in error as the
bonding company, and to defendant in error as the bank.

The bank, as plaintiff in the trial court, brought this
action against the bonding company and one Dodge. The
complaint consisted of eight separate claims which were
for damages alleged to have been sustained by the bank
as a result of frauds committed by Dodge. It alleged lia-
bility of the bonding company for payment of damages
for the reason that said company had issued a surety

bond conditioned that Dodge would conduct his business as a motor vehicle dealer without fraud or fraudulent representations, and without violation of the provisions of chapter 78, Session Laws of Colorado, 1945, as amended. This statute requires, inter alia, that dealers in motor vehicles must procure a license, and before a license will issue the applicant must post a surety bond indemnifying any and all persons for loss suffered by reason of fraud, or fraudulent representations of the dealer, and conditioned further for the payment of all judgments entered against such dealer for any such fraud, or violation of the motor vehicle dealers' law.

The bonding company and Dodge filed separate answers. Dodge denied the alleged fraud and set up affirmative defenses not necessary to consider here. The bonding company denied fraud on the part of Dodge and affirmatively pleaded: (1) That if any damage was sustained by the bank in its dealings with Dodge the same was occasioned by the bank's "own wrong and by and through its own means and default"; (2) that the bank failed to act "with ordinary care, prudence and caution" and was not deceived by any fraud of Dodge; (3) that the bank "ratified and confirmed the alleged fraud"of Dodge; (4) that assets of Dodge in the hands of the bank were dissipated and wasted by the bank; (5) and that the bonding company's liability as surety did not attach until the date of the issuance of the dealer's license, to wit, July 1, 1947.

Trial was to the court without a jury. The court found against defendants Dodge and the bonding company, and entered judgment in favor of the bank for the sum of $2,166.00 plus interest and costs. The bonding company alone brings the cause here for review by writ of error.

The facts which are controlling are not disputed. On June 2, 1947, Dodge purchased a used car business from Lorenz. Dodge operated the business, without the license required under the terms of the statute, from June 2, 1947, until July 1, 1947. His license was issued on the

latter date and thereupon the surety bond of the bonding company became effective. Liability of the surety was expressly limited to activities of the principal "during the time of said license and all lawful renewals thereof." Lorenz, prior to the sale, had financed his business through plaintiff bank. Dodge also made his financing arrangements with the bank. The system of financing was that frequently employed by dealers in automobiles and is commonly called "floor planning." Under this plan the bank loaned to Dodge slightly less than what Dodge said he paid for a motor car, taking a chattel mortgage on the vehicle, but turning back the title thereof to him with the understanding that he could sell the car and that the mortgage would be paid off immediately following the sale of the car by him.

The eight separate claims of the bank are based upon eight original loans made by the bank to Dodge, all of which took place prior to July 1, 1947, the date upon which any liability of the bonding company attached. The loans were made between June 3, 1947, and June 30, 1947. The last item, a loan of $1,510.00 dated June 30, 1947, was made upon the security of a house trailer, and fraud was alleged in that Dodge was not the owner thereof at the time he signed the mortgage and that it already was subject to the lien of a chattel mortgage of record. Dodge owned all the other vehicles at the time he procured the original loans and executed the chattel mortgages securing payment thereof. It is clear from the evidence that Dodge sold all of the vehicles, except the trailer which was the subject of the eighth claim, prior to July 1, 1947, and the court found on disputed evidence that the mortgages were not paid off from the moneys received by Dodge when the vehicles were sold. Any misappropriation of moneys by Dodge actually took place as the cars were sold, and they were sold prior to the effective date of the bond signed by the bonding company.

On August 8, 1947, the bank, having reached the con-

clusion that Dodge was not moving his cars fast enough, and having theretofore determined to loan no more money to him, prepared a renewal note for all sums owed by him on previous loans. This note was payable in thirty days, and a "consolidated mortgage" was executed to secure its payment. It purported to place a lien on the seven vehicles which actually had been sold and delivered in June, and upon the trailer which Dodge did not own and which already was subject to an outstanding mortgage. Dodge received no additional money or other thing of value when this "consolidated mortgage" was signed.

The bank in its complaint did not allege any facts which showed that the mortgage of August 8, 1947, was a renewal of an outstanding debt. It alleged that *after* August 8, 1947, the said vehicles were sold by Dodge without discharging the liens thereon and that the bank was thereby defrauded. However, the bonding company clearly developed the fact that the cars involved in the controversy were not owned by Dodge when the transaction of August 8 took place, and that upon the date the bond became effective, (July 1, 1947) Dodge already had secured from the bank all moneys that he received in connection with the cars here involved, and had misappropriated the moneys which he should have paid over to the bank on account of the sale of said cars.

Question to be Determined

*Can a surety on an indemnifying bond, executed pursuant to the provisions of the Motor Vehicles Dealers Act, be held liable for the payment of damages resulting from frauds which actually took place prior to the date the bond became effective, upon the ground that after the bond became effective the wrongdoer made new false representations concerning the subject matter of his original transaction, but upon the making of which the defrauded party did not part with value in reliance thereon?*

The question is answered in the negative. The fraud

charged against defendant Dodge was, in substance, that he mortgaged property and sold the same without discharging the lien of the mortgage. A fraud was proven, but it was not proven as alleged. There was no sale of property included in the chattel mortgage of August 8, 1947, subsequent to that date. The instrument purported to place a lien upon property that had been sold more than a month prior thereto, and Dodge had no interest whatever in any of said property. If the bank had parted with new money in reliance upon Dodge's representation that he owned said vehicles on August 8, 1947, then there might be basis for the contention that the bank was damaged thereby. The only evidence of fraud or misrepresentation or other conduct by Dodge, during the time the bond was in effect, is the testimony relating to the execution of the "consolidated mortgage," in which he represented that he owned the property described therein. This representation was admittedly false. However, the bank suffered no new loss by reason thereof, and established no damage or loss whatever which it sustained by reliance upon said representation.

The statute pertinent to the question involved is section 11, chapter 78, Session Laws of Colorado, 1945, which reads as follows: "If any person shall suffer any loss or damage by reason of fraud, fraudulent representation * * * by a licensed dealer * * * such person shall have a right of action against such dealer * * * and the sureties upon their respective bonds."

■ A careful analysis of the undisputed facts in this case will lead to the clear conclusion that the bank did not "suffer any loss or damage by reason of fraud, or fraudulent representation" committed by Dodge during any period of time when the obligation of the bonding company was in effect. Any loss or damage suffered by the bank as a result of the fraudulent conduct of Dodge was an accomplished fact prior to July 1, 1947, the date upon which the bond of the company became effective.

We are supported in this conclusion by our opinion in

*National Surety Company v. Wilson,* 63 Colo. 460, 168 Pac. 751. We there considered the liability of the surety on a bond of a bank official protecting against excessive loans. From that opinion we quote the following: "The contention of the plaintiff in error, that the mere renewal of a note is not an extinguishment of the old debt, but is simply a continuation of that debt, and that such renewal in no way changes the debt, except to postpone the time of payment, must be sustained. *Collins et al. v. Dawley,* 4 Colo. 138, 34 Am. Rep. 72; 7 Cyc. 877, par. b; *Adler v. United States,* 182 Fed. 464, 104 C.C.A. 608; *Coffin v. United States,* 162 U.S. 664, 16 Sup. Ct. 943, 40 L.Ed. 1109; *Hutchins v. Stanley,* 88 Kan. 739, 129 Pac. 1180; *Savings Bank v. Central Market Co.,* 122 Cal. 28, 54 Pac. 273; *Jagger Iron Co. v. Walker,* 76 N.Y. 521; *Tyler v. Anderson,* 106 Ind. 185, 6 N.E. 600. Indeed no authorities are cited to the contrary. We must therefore hold that the surety company cannot be held liable on the bond for a mere renewal of a debt, or any part thereof, existing prior to the date of the first bond, January 1, 1908."

The judgment entered against the bonding company is reversed and the cause remanded with directions to dismiss the action as to said defendant.