249 P.2d 830

**COMMERCIAL STANDARD INS. CO.**

**v. WEST.**

No. 5443.

Supreme Court of Arizona.

Nov. 3, 1952.

Struckmeyer & Struckmeyer and Jack C. Cavness, all of Phoenix, for appellant.

Jerman & Jerman and Richard R. Greenfield, all of Phoenix, for appellee.

UDALL, Chief Justice.

Paul West, dba Cut Rate Car Mart, as plaintiff, brought suit against defendants

360

Douglas Reid and Commercial Standard Insurance Co., a corporation. Both the plaintiff and defendant Reid were licensed "used motor vehicle dealers" and the defendant corporation was the surety on Reid's statutory bond. The case was tried to the court sitting without a jury, at the conclusion of which judgment was entered for the plaintiff, against both defendants. The surety company was only held liable for $1,000, the amount of its bond. It alone appeals as the defendant Reid admitted his personal liability.

The parties to this appeal will hereafter be referred to as appellant and appellee.

The facts, which are not in dispute, may be summarized as follows: In November, 1949, appellee West had in stock, and held title to, a 1940 Buick automobile and a 1947 Studebaker automobile. During that month he sold these cars to different purchasers. Purchase orders, on his forms, were used in connection with each sale. In each instance conditional sales contracts were also signed by the "purchasers". Appellee did not sign these contracts as "seller" though he was the true owner. In keeping with an established practice based on an oral agreement between them, appellee delivered the contracts to the defendant Reid who signed them as "seller" and, through a "dealer's setup" or arrangement—not enjoyed by appellee—assigned the contracts to the Valley National Bank. The practice was convenient for appellee and profitable to defendant Reid who received two or three percent of the contract price.

The appellant has consistently maintained throughout these proceedings, first, that the complaint does not state a claim upon which relief could be granted, and secondly that the evidence presented does not support the judgment entered. The court, however, denied appellant's various motions to dismiss and its motion for a new trial predicated upon the ground that the judgment was not justified by the evidence and is contrary to law. These rulings have all been assigned as error. The appeal from the final judgment entered challenges the correctness of these orders. If the judgment is to be sustained, it must be that the bond executed by appellant covers the activities of defendant Reid outlined above.

Chapter 92, S.L.1945 (now appearing as Art. 11, Ch. 66, 1952 Cum.Supp. to A.C.A. 1939), governs motor vehicle dealers. It makes them subject to regulation and control by the superintendent and provides for their licensing. Section 7 thereof, 66–1107, supra, provides for a bond, the pertinent provision reading:

"* * * Every application shall also be accompanied by a bond in the form to be approved by the vehicle superintendent, and shall be in such amount— but in no event less than one thousand dollars ($1,000)—as the vehicle superintendent shall prescribe, and with a surety company authorized to transact business in this state as surety thereon,

and on which such applicant shall be the principal obligor and the state of Arizona shall be the obligee, and such bond shall be conditioned that the applicant will faithfully comply with all of the provisions of the law and that the same shall be non-cancellable for the period of time for which the license to such applicant is issued. *Such bond shall inure to the benefit of any person who shall suffer any loss by reason of any unlawful act of the licensee."* (Emp. sup.)

■ The bond in question is a little different in form and language to the above-quoted statute. Since, however, the bond is furnished because of the statutory mandate we shall construe the bond by the terms of the statute. This rule is well recognized and gives expression to the legislative intent.

"While a surety stands on the letter of his contract, the law at the time of the contract is to be considered in interpreting it, and if it gives to the contract a certain legal effect, that law is as much a part of the contract as if incorporated in it, and the surety is bound according to such law. The liability on statutory undertakings is measured by the terms of the statute, rather than by the wording of the instrument, for the sureties engage with eyes open to such statute. * * *" 50 Am.Jur., Suretyship, Section 33.

The Supreme Court of Iowa, in the case of Charles City v. Rasmussen, 210 Iowa 841, 232 N.W. 137, 139, 72 A.L.R. 638, succinctly stated the rule as follows:

"The bond in this case is a statutory bond, and the liabilities of the parties to the bond must be measured by the statute and not by the wording of the bond. * * * We have said repeatedly that any additions to such bond will be treated as surplusage, and any omission of the provisions of the statute will be read into the bond. * * *"

This is in accord with our holdings. See: National Surety Company v. Arizona Grocery Co., 32 Ariz. 399, 259 P. 404; Ward v. Johnson, 72 Ariz. 213, 232 P.2d 960.

It is urged by the appellant that the actions of defendant Reid in relation to appellee were completely outside the scope of his activities as a licensed dealer and therefore not covered by the bond. In its brief appellant states:

"The sole question involved for decision in this case is whether or not the defendant, Douglas Reid, in his dealings with plaintiff, was acting in his capacity as a 'used motor vehicle dealer'.

* * * * * *

"Had this action been filed by the Valley National Bank for a loss sustained by the bank, there would no doubt have been a valid argument that the surety would be liable to the bank

upon the bond. *The bank dealt with the defendant Reid as a licensed dealer.* On the other hand, the plaintiff dealt with the defendant Reid because of the convenience involved to the plaintiff." (Emp. sup.)

Appellant apparently concedes that Reid was acting in his capacity as a licensed dealer when he assigned the conditional sales contracts to the bank and, had loss occurred, he and his surety would be liable to it. The question is therefore presented: in considering the same acts and the whole transaction, was Reid acting in the capacity of a licensed dealer in relation to appellee? and if not so acting in such a capacity, is there no recovery from the surety where loss occurs?

Section 1 of the Act, supra, supplies this definition:

" 'Used motor vehicle dealer' shall mean any person, other than a new motor vehicle dealer, who buys, sells or exchanges, or offers or attempts to negotiate a sale or exchange of any interest in, *or who is engaged in the business of selling,* used motor vehicles; * * *." (Emp. sup.)

■ The statute in question encompasses and the bond is given to cover the *business* of selling used cars. That this is more than just the actual sale or exchange of a used car is apparent from the statute itself. "Business" was defined in People ex rel. Attorney General v. Jersin, 101 Colo. 406, 74 P.2d 668, 670, in its broad sense as meaning:

"* * * the efforts of men by varied and diverse methods of dealing with each other to improve their individual economic conditions and satisfy their desires, * * *."

A person who engages in the used car business, as in any business, must concern himself not alone with selling, but with all the myriad details required to conduct such a business. That each part of the business contributes to the total success or failure is patent.

Also the statute itself is broader, we believe, in allowing recovery against a principal and his surety by persons injured by the unlawful acts of the dealer than the narrow construction contended for by appellant. Appellant has referred us to the case of Asa S. Agar, Inc., v. Texas Underwriters, Tex. Civ.App., 129 S.W.2d 374, and the case of Carstensen v. Stratton, 90 Utah 19, 58 P.2d 1035, for the proposition that a surety on a statutory bond

"* * * is not liable for the acts of such principal unless those acts were within the duties of such trade as defined by statute."

In the Agar case the bond was required as a condition precedent to doing business in Texas as a dealer in citrus fruit and conditioned "upon compliance with the * * * terms of all contracts * * * in connec-

tion with * * * citrus fruits" [129 S.W. 2d 375], allowing actions on the "bond by any *person* with whom applicant deals in purchasing, handling, selling and accounting for sales of citrus fruit". The statute, however, restricted "persons" to those who handled citrus, to consignors or producers of farm products; and a consignor of boxes, nails and other supplies was held not to be within the class covered. The Carstensen case is similar in that the bond was required of produce dealers and conditioned that they should also fulfill their contracts but limiting it to the business of "commission buying, selling, or handling of produce" [90 Utah 19, 58 P.2d 1937]. A person who made an outright sale of produce, not on "commission" was not covered. Cf. Arizona case, Bianco v. Firemen's Fund Indemnity, 72 Ariz. 181, 232 P.2d 386.

The instant statute and bond are not limited but are all-inclusive where there has been an unlawful act by the dealer, for the statute expressly provides that "Such bond shall inure to the benefit of any person who shall suffer any loss by reason of *any unlawful act of the licensee.*" (Emp. sup.) The Supreme Court of Louisiana, in the case of Hartman v. Greene, 193 La. 234, 190 So. 390, 391, stated:

"The term 'an unlawful act' does not mean necessarily a criminal act; it means a wrongful act, or a tort—any wrongful act (not involving a breach of contract) for which a civil action will lie. * * *"

Applying this rule to the facts of this case, we hold that the surety (appellant) is liable to appellee for the conversion by defendant Reid of moneys belonging to appellee, as the acts complained of arose out of Reid's actions in the capacity of a used car dealer. Had the latter not been a licensed dealer he would have been unable to follow the procedure outlined to procure for himself the commission out of the reserve fund which was set up at the bank for such dealers. We perceive no legal distinction between the admitted right of the bank to recover on the bond had it suffered a loss and the right of the appellee to do likewise.

Judgment affirmed.

STANFORD, DE CONCINI, and LA PRADE, JJ., and DON T. UDALL, Superior Court Judge, concur.

Note: Justice PHELPS, being unable to take part in the case, the Honorable DON T. UDALL, Judge of the Superior Court of Navajo County, participated in his stead in the determination of this appeal.