300 P.2d 619

*Clifford J. LAWRENCE, Plaintiff and Respondent,*

v.

**J. Ray WARD, Lewis Selleneit, d/b/a United Auto Sales, and United States Fidelity & Guaranty Company, Defendants and Respondents,**

**John W. Hardman et al., Third Party Plaintiffs and Respondents,**

**Sandy City Bank, Third Party Plaintiff and Appellant.**
**No. 8461.**

Supreme Court of Utah.
July 20, 1956.

H. A. Smith, Salt Lake City, for appellant.

Victor Hatch, O. Webster Adams, Joseph S. Jones, Lowry, Kirton & Bettilyon, John E. Stone, Salt Lake City, for respondents.

Oscar W. McConkie, Salt Lake City, Ira A. Huggins, Ogden, C. Vernon Langlois, Salt Lake City, Capt. James C. Waller, Jr., Area Judge Advocate's Office, Fort Douglas, Elliott Evans, Donn E. Cassity, Salt Lake City, Charles E. Bradford, Salt Lake City, Sumner J. Hatch, Salt Lake City, for other respondents.

McDONOUGH, Chief Justice.

This action was commenced by Clifford J. Lawrence against J. Ray Ward and Lewis Selleneit, d/b/a United Auto Sales, and the United States Fidelity and Guaranty Company, which provided the statutory bond required by the State of Utah as a condition precedent to its licensing the two men to engage in the business of selling used cars. The third party plaintiffs asserted damages also arising out of the conduct of the business. The trial court awarded judgment in the varying amounts of the transactions for all the plaintiffs against Ward and Selleneit, but distinguished between those who suffered loss by reason of a purchase or trade-in of an automobile and the Sandy City Bank, whose losses were occasioned because of its relationship of financier to the operation, and awarded judgment against the bonding company only as to the former. The Sandy City Bank appeals, contending that the bond must be made available for the payment of its losses in accordance with U.C.A.1953, 41-3-18:

"If any person shall suffer any loss or damage by reason of fraud, fraudulent representation or violation of any

of the provisions of this act by a licensed dealer or one of his salesmen, then acting for the dealer on his behalf, or within the scope of the employment of such salesmen, such person shall have a right of action against such dealer, and/or the automobile salesman guilty of the fraud, fraudulent representation or violation of any of the provisions of this act, and/or the sureties upon their respective bonds."

The respondent bonding company contends that a financier of a motor vehicle dealer's business is not within the class of persons intended by the statute to be protected by the bond. It argues that a financial institution continuing upon a course of dealing with a business man has opportunity to protect itself, whereas a stranger purchasing an automobile or delivering up his car for sale by the dealer is not in such a position of knowledge and control, citing Lebrecht v. Union Indemnity Co., 53 Idaho 228, 22 P.2d 1066, 89 A.L.R. 640. That case construes a statute requiring a farm produce broker or commission merchant to obtain a bond for the benefit of persons who might be injured by his fraud or breach of contract to be limited strictly to the protection of consignors, who deliver their produce to the consignee without security. A similar statute of this state was likewise restricted in Carstensen v. Stratton, 90 Utah 19, 58 P.2d 1035. Both cases refer to language of the Act construed which indicates

such limitation. Respondent urges that the bond, "conditioned that said applicant shall *conduct his business as a dealer* without fraud * * *", U.C.A.1953, 41–3–16, is liable only for transactions within the strict definition of a motor vehicle dealer's business, i. e. the buying and selling of automobiles. It further cites the fact that the bonds required are small in amount, $5,000 for a dealer, $1,000 for a salesman, as demonstrating a legislative intent to protect only customers of the dealer.

This question was considered in the light of the Arizona statute covering the same business in Commercial Standard Ins. Co. v. West, 74 Ariz. 359, 249 P.2d 830, 832, in which the court stated:

"The statute in question encompasses and the bond is given to cover the *business* of selling used cars. That this is more than just the actual sale or exchange of a used car is apparent from the statute itself. 'Business' was defined in People ex rel. Attorney General v. Jersin, 101 Colo. 406, 74 P.2d 668, 670, in its broad sense as meaning:

"' * * * the efforts of men by varied and diverse methods of dealing with each other to improve their individual economic conditions and satisfy their desires, * * *.'

A person who engages in the used car business, as in any business, must concern himself not alone with selling but

with all the myriad details required to conduct such a business. That each part of the business contributes to the total success or·failure is patent.

"Also the statute itself is broader, we believe, in allowing recovery against a principal and his surety by persons injured by the unlawful acts of the dealer than the narrow construction contended for by appellant. * * * (Distinguishing the Utah case Carstensen v. Stratton, supra.)"

The only other case from other jurisdictions in which this question was directly raised appears to be Massachusetts Bonding & Ins. Co. v. Bank of Aurora, 124 Colo. 485, 238 P.2d 872. The Colorado court held, under a statute practically identical to ours, that the bank could not recover on the bond since the acts of fraud complained of took place prior to the effective date of the bond, thereby implicitly holding that the statute is broad enough to cover financial transactions necessary to the development of a motor vehicle dealer's business. We find no cases holding otherwise.

In the case of Bates v. Simpson, 121 Utah 165, 239 P.2d 749, 753, this court characterized one of the defrauded persons as a "financier of the transaction" and allowed him recovery against the dealer's bond. A re-examination of the statutes and the pertinent cases, supra, reveals nothing to impel us to retreat from the position that the bond was intended to protect all persons.

doing business with another in his capacity· as a licensed motor vehicle dealer.

Therefore, we examine the particular transactions wherein the bank lost money to determine whether they fall within the purview of U.C.A.1953, 41–3–18, supra.

1. Ward, being in financial difficulty, sold a 1954 Cadillac and delivered title to the buyer. He then represented himself to the agent of the bank as the owner and mortgaged the car, receiving a check for $2500, which was cashed and collected. He was unable to pay the promissory note and the bank claims that its loss was occasioned by the fraudulent representations of a licensed dealer and should be recoverable against his bond.

Respondent bonding company argues that the bank should have required a delivery of the certificate of title, and having failed to protect itself in this way, it cannot be heard to complain of the fraud. Contributory negligence is not a defense to an action for fraud, but plaintiff must prove a material, false representation, an intention that the representation should be acted on in the manner contemplated; the hearer's ignorance of the falsity of the statement, his reliance upon it, his right to rely and his proximate injury. Oberg v. Sanders, 111 Utah 507, 184 P.2d 229. Whether or not the bank had a right to rely upon the representation of Ward must be considered

in the light of their relationship and prior dealings. Ward, knowing of the method used by the bank in financing his sales, deliberately contrived to deceive its agent. This was no mere promise or opinion; he stated that he owned the automobile, knowing that the agent would believe him and act upon his representation. Clearly this was fraud and the bank should have judgment against the bonding company for this amount.

■ *2.* One Dalton purchased a 1954 Chevrolet from United Auto Sales and executed his note to the Sandy City Bank. A check, payable to Dalton and United Auto Sales jointly, was sent to the company by the bank and later cashed and collected. When the company was unable to deliver title, Dalton refused to pay on the note because his endorsement on the check was a forgery. The trial court gave judgment for the bank against Ward and Selleneit since they had received the proceeds of the check. *A forgery likewise falls* within the protection of the bond and it is immaterial that the bank carried insurance against forgery.

■ *3.* On a transaction similar to the one described above, the bank accepted and cashed a check bearing the endorsement of United Auto Sales only, without the signature of the co-payee, one Hardy. When Ward and Selleneit could not deliver title to the automobile purchased, the co-payee refused to endorse the check which had already been paid to the dealer. The bank relies upon the violation of the Act in the failure of the company to deliver certificate of title within forty-eight hours to the vendee, U.C.A.1953, 41–3–2, and further claims as fraud the collection of the proceeds of the check when the dealer knew he could not deliver title.

Unlike the first two transactions, there was *no fraudulent representation here.* It was obvious to the bank that the check was not properly endorsed and it had no right to rely on the expectation that the signature of the co-payee could be obtained at a later date. The loss of the bank occurred by reason of its own negligence and prior to the time when it was discovered that United Auto Sales could not deliver title, and it cannot now obtain judgment against the bond.

Judgment affirmed as modified. Each party to bear its own costs.

CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (concurring and dissenting).

I concur as to the result reached by the main opinion in the transaction where (3) a co-payee had not indorsed a check which

the bank nonetheless cashed, and dissent from both reason and result reached in the (1) Ward and (2) Dalton transactions. In the Ward case, it was represented that the sale was to Ward himself, whereas there was a previous sale at an auto auction. In this instance, which was a paper transaction involving himself, not a purchaser from himself or his company, it seems clear that the bond conditioned on his *"conducting his business as a dealer* without fraud," was intended to require a loss through fraud while dealing with the buying and selling public, and certainly did not contemplate that the principal on the bond, dealing with himself only in buying or selling a car, would be included in such category. As to the Dalton transaction, the bank is charged with the principle that to constitute actionable fraud, the representee must have acted reasonably in relying on the representation made,— *not blindly, stupidly or without reasonable caution.* It becomes apparent that the bank is charged with such principle, and should not recover, when it is pointed out that a casual examination of the genuine Dalton signatures found on the promissory note and the chattle mortgage were not the same as a purported Dalton signature found on the check. I believe the trial court should be affirmed.

WORTHEN, J., concurs in the results of HENRIOD'S, J., concurring and dissenting opinion.