Eddy BETENSON, et al., Plaintiffs and Appellants,

v.

CALL AUTO AND EQUIPMENT SALES, INC., a Utah corporation, et al., Defendants and Respondents.

Eugene L. LOWIN and Geneva Lowin, Plaintiff and Appellants,

v.

CALL AUTO AND EQUIPMENT SALES, INC., a Utah corporation, et al., Defendants and Respondents.

No. 17600.

Supreme Court of Utah.

April 19, 1982.

Stephen B. Mitchell, Salt Lake City, for plaintiffs and appellants.

Bruce H. Jensen/David G. Williams, Salt Lake City, for Fireman's Fund.

R. Dale Potter, Salt Lake City, for Campbell.

Gaylen S. Young, Jr., Salt Lake City, for Call Auto.

DURHAM, Justice:

The plaintiffs in this consolidated action sought recovery from the defendant Fireman's Fund Insurance Company on a Motor Vehicle Dealer's Bond issued in favor of the defendant, Call Auto and Equipment Sales, Inc. The lower court granted a motion to dismiss by the defendant Fireman's Fund Insurance Company. The plaintiffs appeal from the order of dismissal and from the court's refusal to allow the plaintiffs to amend their complaints.

The plaintiffs furnished sums of money to the defendant, Call Auto, pursuant to written agreements drawn up by the defendant. These agreements typically state that the defendant has approached the plaintiff for the purpose of "entering into an investment" in the defendant's business of buying and selling "all types of personal property and equipment" as "a type of joint venture." Each agreement states the amount paid to Call Auto and sets out a repayment schedule of at least three interest payments ranging from 2½ to 10 per-cent per month, followed by a repayment of the original sum, all on specified dates.

The agreements refer to these payments as plaintiff's share of the "profits and investment." The agreements also state that the plaintiffs' "investment" will be secured by "various personal property and equipment in the business," but that Call Auto may deal at a profit with the property and equipment "if they deem it expedient and proper." The agreements are signed by "Elroy T. Barlow, President" for Call Auto.

The plaintiffs alleged in their complaints that defendant Barlow induced them to enter the agreements by representing to them that Call Auto was a profitable business and that their money would be used solely for the buying, refurbishing and selling of various personal property and equipment, apparently heavy construction equipment. The plaintiffs alleged breach of contract and fraudulent misrepresentation in that the amounts paid to Call Auto have not been repaid, the plaintiffs were never given a security interest, and the money was not used for the purpose stated but for the general operation of Call Auto.

The plaintiffs asserted a claim against the defendant/respondent Fireman's Fund Insurance Co. under § 41–3–18 Utah Code Ann. (1953). Section 41–3–16 U.C.A. (1953) provides that a motor vehicle dealer must procure a bond before obtaining a dealer's license. Section 41–3–18 gives to any person who suffers a loss by reason of fraud or fraudulent misrepresentation a cause of action against the dealer or the surety on the bond. The defendant Fireman's Fund moved to have the complaint against it dismissed, arguing that the plaintiffs had engaged in a joint venture with the defendant dealer and therefore could not recover against the dealer's bond. The trial court found that the plaintiffs and defendants, except for Fireman's Fund, were joint venturers and granted the motion.

The question before this Court is whether the trial court erred in ruling as a matter of law that the plaintiffs were not entitled to recover under the defendant/respondent's bond. This question turns

on whether the trial court correctly found that plaintiffs entered into a joint venture with Call Auto. It is well established that where the issue is solely one of law, as in this instance, this Court is as capable of determining the question as the trial court and we are not bound by its conclusions. *Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.*, Utah, 596 P.2d 1033, 1036 (1979). The respondent Fireman's Fund asserts that the plaintiffs have admitted their status as joint venturers in their complaint and that the plaintiffs are bound by the "express provisions of the agreements" which refer to "a type of joint venture." The admission claimed by Fireman's Fund is found in paragraph 7 of plaintiff Betenson's complaint:

> Said defendant represented to Betenson that if he would invest funds for a joint venture to purchase, refurbish and sell such equipment, ... Betenson would receive a guaranteed profit for his investment.

Because the plaintiffs claim that they made their investments in reliance on this representation, Fireman's Fund argues that this statement constitutes an admission that the plaintiffs were engaged in joint ventures with Call Auto. However, the plaintiffs were merely quoting defendant Barlow's representations in their complaint. Even if the plaintiffs believed defendant Barlow's representations, their beliefs are not determinative of their status. A party's belief that he has purchased the Brooklyn Bridge will not strengthen his claim of ownership. Even the use of the words "joint venture" in a contract will not be found determinative if the elements of a joint venture are missing. *See, e.g., Lignell v. Berg*, Utah, 593 P.2d 800 (1979).

■ The leading case in Utah defining the elements essential to a joint venture is *Bassett v. Baker*, Utah, 530 P.2d 1 (1974). There this Court identified as requirements:

> ... a community of interest in the performance of the common purpose, a joint proprietary interest in the subject matter, a mutual right to control, a right to share in the profits, and ... a duty to share in any losses which may be sustained.

530 P.2d at 2. These same elements are required in other jurisdictions.[1] In the instant case, beyond the words "investment in their business as a type of joint venture," there is no indication of any of the attributes of a joint venture in the contracts except for the language in paragraph 2: "Second Party agrees and guarantees to pay over to the First Party, as his or her share of the profits and investment, the following sums of money on the following dates ...." The words "share of the profits" are certainly suggestive, but standing alone cannot serve as a basis for finding a joint venture unless the contract itself requires a real distribution of profits, which is not the case here. Conspicuous by their absence are any provisions for shared control of the interest or enterprise, and shared liability for losses. In fact, these elements of a joint venture are specifically excluded by the agreement. The only suggestion of shared control is found in paragraph 3 which states that the plaintiffs' investment is to be secured by "various personal property and equipment." However, since Call Auto specifically retained the right to deal with the property unilaterally and without consulting plaintiffs, that tenuous suggestion is negated. In addition, the paragraph dealing with the so-called "share of the profits," referred to earlier, specifies a payment schedule, upon dates certain and in definite amounts, without reference to losses or even the actual occurrence of profits. "Each agreement, taken in its entirety, demonstrates an intent to schedule repay-

---

1. See, e.g., *Murry v. Western American Mortgage Co.*, 124 Ariz. 387, 604 P.2d 651 (1979); *Connor v. Great Western Savings and Loan Association*, 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968); *Breckenridge Co. v. Swales Management*, 185 Colo. 160, 522 P.2d 737 (1974); *Dang v. F and S Land Development Corp.*, Hawaii, 618 P.2d 276 (1980); *Easter v.*

*McNabb*, 97 Idaho 180, 541 P.2d 604 (1975); *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816 (1979); *Rude v. Neal*, 165 Mont. 520, 530 P.2d 428 (1974); *Fullerton v. Kaune*, 72 N.M. 201, 382 P.2d 529 (1963); *Taquena v. Bob Vale Painting Co.*, Okl., 507 P.2d 539 (1973); *Latham v. Hennessey*, 13 Wash.App. 518, 535 P.2d 838 (1975).

ment of a loan." *Larrabee v. Royal Dairy Products Co.*, Utah, 614 P.2d 160 (1980).

This conclusion is corroborated by the record, which contains the affidavits of Mr. Terry A. Isom, a certified public accountant, defendant L. A. Campbell and defendant Elroy T. Barlow. Mr. Isom examined the records of Call Auto in March or April of 1980 and found that loans had been received from various individuals. Defendant L. A. Campbell, a shareholder, director and officer of Call Auto, stated that he discovered the existence of "borrowings" but had never met the plaintiffs or made any representations to them. Defendant Barlow stated in his affidavit that it was the unanimous decision of the Call Auto Board of Directors to continue to receive "loans" from individuals and that he had authority to obtain such loans. None of the affiants indicates any knowledge of the plaintiffs as persons of authority or control in the business of Call Auto or any expectation that the individuals making loans would be expected to share either profits or losses. We hold, therefore, that the agreements entered into by the plaintiffs and Call Auto were not joint venture agreements but were loan agreements, and the motion to dismiss was improperly granted on that ground.

■ Since we have held that the agreements pled by plaintiffs constitute loan agreements, no ruling is required on the lower court's denial of plaintiffs' motion for leave to amend their complaints. However, it should be noted that the argument made by Fireman's Fund that the transactions in question here, if they were loans, were usurious and illegal under §§ 70B–3–201(1) and 70B–3–602(2) U.C.A. (1953) and therefore are void and unenforceable, is without merit. A consumer-related loan under § 70B–3–602(1) is one where the "debtor is a person other than an organization." The debtor in the agreements in this case was a corporation, and the statute is inapplicable.

■ Although respondents have not raised the argument, a threshold question regarding the scope of the dealer's bond statute must be discussed in connection with our remand of this case for trial. The statute provides for bonding "conditioned that said applicant shall conduct his *business as a dealer* without fraud or fraudulent misrepresentation . . . ." § 41–3–16(1) U.C.A. (Emphasis added.) Section 41–3–18 then establishes a cause of action against the dealer and the surety on his bond for "any person [who] shall suffer any loss or damage by reason of fraud, fraudulent representation or violation of any of the provisions of this act by a licensed dealer . . . ." It is clear that coverage under the bond exists only for activities constituting the conduct of the dealer's business "as a dealer," or for activities which the dealer has represented as part of his business "as a dealer." Thus a dealer cannot avoid liability on his bond by asserting that funds obtained initially for his dealership business were in actuality used for some other purpose. There is no showing in the agreements between the plaintiffs and the defendant that the subject matter of the transactions was represented as having anything to do with Call Auto's motor vehicle dealership business. The agreements are entirely silent on the question of whether the monies obtained thereby were represented as going into equipment and property which were part of the dealership, or into unrelated business or leasing activities. That is an issue of fact which must be resolved by the trial court.

It should be noted that the fact that the plaintiffs were providing financing, rather than buying or selling motor vehicles, is not in and of itself significant if the plaintiffs were dealing with defendant Call Auto in its capacity as a motor vehicle dealer, and if the contracts were undertaken (or represented as being undertaken) by defendant Call Auto as part of its business as a dealer. In *Lawrence v. Ward*, 5 Utah 2d 257, 260–261, 300 P.2d 619, 622 (1956), this Court held that the statutory dealer's bond "was intended to protect all persons doing business with another in his capacity as a licensed motor vehicle dealer," and permitted a bank to recover the amount of financing it had provided for a sale by the dealer. Although

that case contained a close connection between the transaction and the actual sale of an automobile, the opinion noted with approval the following language from an Arizona case suggesting a broad interpretation of the meaning of the word "business" in our statute:

A person who engages in the used car business, as in any business, must concern himself not alone with selling but with all the myriad details required to conduct such a business. That each part of the business contributes to the total success or failure is patent.

*Commercial Standard Insurance Co. v. West,* 74 Ariz. 359, 361, 249 P.2d 830, 832 (1952). In a more recent case, *Western Surety Co. v. Redding,* Utah, 626 P.2d 437, 439 (1981), this Court emphasized that the bond "was intended to protect all persons doing business with a motor vehicle dealer." We note that the foregoing statement is accurate so long as the motor vehicle dealer is himself doing business *as a dealer;* the bond was never intended to indemnify all persons who contract with a dealer in a capacity unrelated to his motor vehicle dealership. Consequently, this case is reversed and remanded to the district court for a trial to determine first, whether the agreements were entered into by defendant in connection with its business as a licensed motor vehicle dealer and, if so, for resolution on the merits. No costs awarded.

HALL, C. J., and STEWART, OAKS and HOWE, JJ., concur.