**Robert CLOSE, d/b/a Bob's Car Company, Plaintiff and Appellant,**

v.

**TRUCK INSURANCE EXCHANGE and Dennis Petersen, d/b/a Dennis Petersen Sales, Defendants and Appellee.**

**TRUCK INSURANCE EXCHANGE, Third–Party Plaintiff,**

v.

**Martha R. PETERSEN, Third–Party Defendant.**

**No. 920154–CA.**

Court of Appeals of Utah.

May 25, 1993.

Darrell G. Renstrom (deceased) and Tim W. Healy, Ogden, for plaintiff and appellant.

Aaron Alma Nelson and Clifford J. Payne, Salt Lake City, for defendants and appellee.

Before BENCH, GARFF and JACKSON, JJ.

OPINION

GARFF, Judge:

Robert Close, d/b/a Bob's Car Company (Close), appeals from a judgment in favor

of Truck Insurance Exchange (TIE). We affirm.

We adopt the trial court's findings because Close does not challenge them. At all times relevant to this appeal, Close and Dennis Petersen, d/b/a Dennis Petersen Sales (Petersen), held Utah motor vehicle dealers licenses. Pursuant to Utah Code Ann. § 41–3–16(1) (1988) of the Motor Vehicle Business Regulation Act,[1] Petersen obtained a statutory surety bond, which TIE issued to Petersen on June 8, 1989, for the penal sum of $20,000. The bond, in relevant part, requires Petersen as principal and TIE as surety

> to indemnify persons, firms and corporations in accordance with Utah Code Ann. § 41–3–16(1) ... for loss suffered by reason of the fraud or fraudulent representations made or through the violation of any of the provisions of said Motor Vehicle Business Act or any law respecting commerce in motor vehicles or rule or regulation respecting commerce in motor vehicles promulgated by a licensing or regulating authority....

Over a period of approximately ten years, from 1980 until September 1990, Close sold numerous vehicles to Petersen in the course of their businesses as used car dealers. Prior to paying Close, Petersen would take possession of a vehicle and resell it, after which Petersen would pay Close and then obtain the vehicle's certificate of title. Between May and September 1990, Close sold the following vehicles to Petersen: a 1986 Chevrolet Chevette for $2500; a 1981 Ford F250 pickup truck for $3800; and a 1987 Chevrolet Sprint for $2200. Consistent with their prior dealings, Petersen did not pay Close when he took possession of the vehicles. Petersen subsequently sold all three vehicles but failed to pay Close. Close therefore retained the certificates of title, and Petersen was unable to deliver title to the third-party purchasers. Petersen intended to pay Close for the three vehicles, but was unable to pay due to the financial failure of his business.

Also, in September 1990, Close loaned Petersen $6000. As collateral for the loan, Petersen gave Close a certificate of title to a 1988 Ford Thunderbird. Intending to repay the loan, Petersen, on October 1, 1990, issued Close a check for $5980, whereupon Close returned the certificate of title to Petersen. The check, however, was returned for insufficient funds. Petersen issued another check to Close for $6000 on October 25, 1990, which also was returned for insufficient funds.

Over a number of years, Petersen had financial dealings with Valley Bank & Trust Company (Valley Bank). It had been the practice of Valley Bank to honor overdrafts of up to $10,000 on checks issued by Petersen. When Petersen issued the October 1, 1990, check, Valley Bank ceased honoring Petersen's overdrafts. Before issuing the second check, Petersen reestablished the agreement with Valley Bank to honor his overdrafts. Thus, Petersen issued the checks pursuant to the agreement with Valley Bank to pay overdrafts, intending that the checks would be paid. After the checks were returned, Petersen paid Close $2500 toward the loan. Petersen, however, was unable to make additional payments.

Close wrote a letter to the Utah Department of Motor Vehicles, complaining that he had sold four vehicles to Petersen for which he had not been paid, and that Petersen had issued a bad check to him for $6000. The letter did not contain any allegation of fraud or violation of the Motor Vehicle Business Regulation Act. In the process of investigating the complaints, the Motor Vehicle Enforcement Division persuaded Close to surrender the certificates of title to the third-party purchasers. The Motor Vehicle Enforcement Division did not take any action against Petersen concerning his transactions with Close.

On February 7, 1991, Close sued Petersen and TIE, alleging that Petersen made fraudulent representations and violated the Motor Vehicle Business Regulation Act in his transactions with Close, and that TIE was liable as surety on the bond. TIE, by way of third-party complaint, joined Peter-

---

1. *See* Utah Code Ann. § 41–3–101 to –702 (Supp. 1992) for the current version of the Act.

sen's wife, Martha R. Petersen, and cross-claimed against Petersen. All claims, except those made by Close against TIE as surety, were settled prior to trial. After a bench trial, the court ruled in favor of TIE, concluding that Petersen had neither. committed fraud, nor had he violated any provisions of the Motor Vehicle Business Regulation Act or any law, rule, or regulation respecting the commerce of motor vehicles. This appeal followed.

On appeal, Close claims that the trial court erred by ruling in favor of TIE on the bond. More specifically, Close contends that Petersen made fraudulent representations in the process of issuing the October 25, 1990, check, and that Petersen violated section 41–3–2(1)(a) of the Act by not timely submitting the certificates of title, as required.[2]

 Because Close does not dispute the court's findings, we decline to consider his attack on the trial court's determination that Petersen did not commit fraud or make fraudulent representations in his dealings with Close. Thus, the sole issue on appeal is whether the loss or damage suffered by Close in his transactions with Petersen was by reason of Petersen's failure to submit the certificates of title as required by section 41–3–2(1)(a). Section 41–3–18 states in relevant part:

A person who suffers a loss or damage by reason of fraud, fraudulent representation, or violation of this chapter, any law respecting commerce in motor vehicles, or a rule respecting commerce in motor vehicles promulgated by a licensing or regulating authority, by a licensed dealer ... may maintain an action for recovery against the dealer ... guilty of the fraud, fraudulent representation, or violation and the sureties upon their respective bonds.

2. Utah Code Ann. § 41–3–2(1)(a) reads:
Every motor vehicle dealer licensed under Section 41–3–6, upon the sale and delivery of any new or used motor vehicle for which a temporary permit is issued under Section 41–3–28 shall, within 30 days, submit a certificate of title or manufacturer's certificate of origin for that motor vehicle, endorsed according to law, to the Motor Vehicle Division, accompanied by all documents required to obtain a

At trial, Petersen conceded that, upon selling the vehicles to third-party purchasers, he failed to submit certificates of title within the time required by section 41–3–2(1)(a). However, when the Motor Vehicle Enforcement Division persuaded Close to surrender the certificates of title to the third-party purchasers, Close gave up any possible remedy he might have had under the Act through the third-party purchasers.[3]

 Close's loss or damage was not due to Petersen's failure to submit the certificates of title. Instead, Close's damage was due to a breach of contract or promise to pay, which is insufficient for recovery under the Act. See Consolidated Fin. Corp. v. Moulton, 25 Utah 2d 416, 418, 483 P.2d 450, 451–52 (1971).

Thus, the trial court correctly granted judgment in favor of TIE. Accordingly, we affirm.

BENCH and JACKSON, JJ., concur.

new certificate of title and registration in the new owner's name.

3. Close cites Lawrence v. Ward, 5 Utah 2d 257, 300 P.2d 619 (1956) to support his argument that he should be allowed to recover on the bond. Lawrence is inapposite, however, because it involved a financier whose loss was caused by the fraudulent representations of a licensed motor vehicle dealer in the course of his business. Id., 300 P.2d at 622.